MICHAEL J. MURRAY *vs.* BOSTON & MAINE RAILROAD.

Suffolk. November 13, 1913. — February 27, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Negligence,* On railroad wharf, Toward invited person.

A railroad corporation maintained a freight shed on a wharf belonging to it, and a steamship company unloaded cargoes at the wharf and deposited them in the loft of the shed. An inclined chute extended from the loft to the floor of the shed, and bales and boxes by this means were landed on the floor within a space about twenty-five feet wide by the side of a track of the railroad corporation, whose employees loaded them upon its cars. A cooper, whose employers had a contract with the steamship company to mend damaged bales and boxes

unloaded from its vessels before they were transferred to the cars, having repaired all the boxes that were damaged, was on his way to receive further orders from an employee of the steamship company, and, instead of going behind the chute as he might have done by a less easy way, passed in front of the chute and was struck by a bale that had been sent down by one of the workmen of the railroad corporation. In an action by the cooper against the railroad corporation for his injuries thus sustained, there was evidence that the defendant generally stationed a man near the foot of the chute to look after the goods as they came down, but that no such man was there at the time of the accident, and there was no evidence that any agent of the defendant knew of the plaintiff's presence at the end of the chute either at the time of the accident or at any other time. *Held,* that, even assuming that the plaintiff had the rights of an invitee on the defendant's premises instead of those of a mere licensee, there was no negligence on the part of the defendant in using the chute and the space in front of it for the obvious purpose for which they were designed and appropriated, and that the fact that the defendant usually stationed a man there to look after the goods as they came down imposed no duty on it to keep a man there for the purpose of warning the plaintiff.

TORT for personal injuries sustained on September 30, 1911, from being struck by a bale of skins thrown down a chute by a servant of the defendant in the freight shed on the defendant's wharf called Mystic Wharf in that part of Boston called Charlestown. Writ dated November 9, 1911.

In the Superior Court the case was tried before *White,* J., who at the close of the plaintiff's evidence, which is described in the opinion, ordered a verdict for the defendant, and, by agreement of the parties, reported the case for determination by this court, with a stipulation that, if the ordering of the verdict was wrong, a verdict was to be entered for the plaintiff in the sum of $250, and that otherwise a verdict was to be entered for the defendant on the verdict.

*P. J. Donaghue,* for the plaintiff.

*A. R. Tisdale,* for the defendant, submitted a brief.

DE COURCY, J. The accident occurred in the defendant's freight shed on Mystic Wharf in Charlestown. The Wilson Steamship Line unloaded cargoes on one side of the wharf and deposited the freight in the loft of the shed. An inclined chute, thirty-five feet long and four feet wide, extended downward from an opening in the loft to the floor of the freight shed. Bales and boxes were dumped into this channel and landed on the floor below, where there was a space about twenty-five feet wide alongside a track of the defendant, and there they were loaded into cars

by its employees. The plaintiff was walking along the floor of the shed by the front of the chute and was about midway between it and the track, when he was struck by a bale of skins that had been sent down by one of the defendant's workmen in the course of his work.

On the evidence disclosed it is doubtful whether the plaintiff had any rights other than those of a mere licensee at the place where he was when injured. He was not an employee of the defendant, but of Phelan and Company, who were coopers. His employers had a contract with the Wilson Steamship Line to mend the damaged bales and boxes unloaded from its vessels before they were transferred to the cars; and the supervision of this repair work was exercised by one Jameson, an employee of the Wilson Line. The plaintiff took his orders from Jameson while there. It does not appear under what terms or arrangements the Wilson Line unloaded cargoes and repaired broken packages on the defendant's wharf, nor where on the defendant's premises or under what conditions the coopering was to be done for the steamship people by the plaintiff's employer. The evidence does not show that the plaintiff had any occasion to work in the vicinity of the place where he was injured. At the time of the accident, having repaired all the boxes that were damaged, he was on his way to Jameson for further orders; and he passed in front of the chute, when he might have gone around behind it, although by a less easy way. There is no evidence that any agent of the defendant ever expressly invited the plaintiff to pass in front of the chute, and it would be difficult to imply such an invitation from the nature and incidents of the plaintiff's employment, so far as shown by the meagre record.

Even assuming that a jury would be warranted in finding that the plaintiff had the rights of an invitee on the defendant's premises, in our opinion no actionable breach of duty by the defendant is shown. The railroad was using this chute, and the space at the foot of it, for the purpose for which obviously both were designed and appropriated, and in the way in which they had been used continuously since the plaintiff first went to work on the premises. There is no evidence that any agent of the defendant knew of the plaintiff's presence in this place of danger, either at the time of the accident or at any other time. The fact that

it generally stationed a man there to look after the goods as they came down, imposed upon it no duty to keep a man there for the purpose of warning the plaintiff.

Without considering the other matters urged in defense, in our opinion the plaintiff failed to prove that his injury was caused by the negligence of the defendant, and the trial judge was right in directing a verdict for the defendant. In accordance with the report the entry must be

*Judgment for the defendant on the verdict.*