## Thomas J. Howard *vs.* New York, New Haven, and Hartford Railroad Company.

Hampden.    September 23, 1920. — October 16, 1920.

Present: Rugg, C. J., De Courcy, Crosby, Carroll, & Jenney, JJ.

*Negligence,* Employer's liability: federal employers' liability act, Violation of rule. *Evidence,* Violation of rule as evidence of negligence, Of rule, Of custom. *Custom.*

At the trial of an action for personal injuries, brought under the federal employers' liability act against a railroad corporation by a flagman in its employ in interstate commerce, there was evidence tending to show that, after the train upon which he was at work stopped in order that cars might be switched to a side track, the plaintiff in accordance with his duties started to walk back from the rear of the train between the rails to insure full protection to his train from a train following, that after he had gone a distance of five car lengths, his train without warning backed down upon him, that it was the duty of the engineer, before proceeding to back the train, to give a whistle signal. There was evidence that the signal was given. The plaintiff testified that he did not hear it, although he admitted that he paid no attention to the train after leaving it. *Held,* that

(1) The jury could have found that, had the whistle sounded, the plaintiff would have heard it;

(2) The jury could have found that the signal was not given, and that the failure to give it contributed to the plaintiff's injury;

(3) The question of the defendant's negligence was for the jury.

At the trial above described, there was evidence tending to show that, owing to the length of time that elapsed between the stopping of the train and its being backed, the engineer might well have inferred that the plaintiff had proceeded far enough back in the performance of his duties to make the giving of the signal unnecessary; but it was held that the questions, whether the failure to give the signal in accordance with the defendant's rule caused the plaintiff's injury, and whether the plaintiff assumed the risk of his injury in all the circumstances, were for the jury.

At the trial of the action above described, it was error to permit the plaintiff to testify that one of the defendant's examiners had told him that a train was not to move backward until a signal was given by the flagman who was protecting it in the rear, and that when he was injured the engineer had backed the train without receiving such a signal, it appearing that there was no such written or printed rule of the defendant and it not appearing that the examiner had authority from the defendant, express or implied, to make such a rule, to give such instructions, or to decide that the printed rules of the defendant should be so construed.

In the circumstances above described it was error to refuse to instruct the jury at the request of the defendant that "the action of the conductor or engineer

in causing the train to back without getting a signal from the plaintiff as rear end flagman so to do was not negligence."

At the trial above described, the plaintiff testified that there was a practice that no train protected by a flagman should be backed until a signal came from the flagman. The record showed no evidence tending to prove that this method of transacting its business was known to the defendant or to its officers, nor any evidence from which it could be inferred that it was assented to by them. The judge refused a request of the defendant, that the jury be instructed that upon all the evidence they could not find that "there was a practice or custom that freight trains engaged in switching movements should not back without getting from the rear end flagman the signal so to do." *Held,* that

(1) The defendant was not bound to observe a practice as to the moving of its trains adopted by its employees without its knowledge or acquiescence;

(2) The instruction asked for should have been given.

TORT for personal injuries received, as described in the opinion, while the plaintiff was in the employ of the defendant in interstate commerce. The declaration contained ten counts, upon only the sixth of which, a count based on the federal employers' liability act, 35 U. S. Sts. at Large, 65, as amended by 36 U. S. Sts. at Large, 291,* the plaintiff relied at the trial. Writ dated June 18, 1917.

In the Superior Court the action was tried before *Callahan,* J. Material evidence is described in the opinion. At the close of the evidence the defendant moved that a verdict be ordered in its favor. The motion was denied. The defendant then asked, among others, for the following rulings of law:

"1. Upon all the evidence in the case the plaintiff is not entitled to recover.

"2. There is not sufficient evidence in the case that the defendant or its employees were negligent to warrant the jury in finding a verdict for the plaintiff."

"6. The defendant's employees in charge of the train had a right to back it for the purpose of switching as described in the testimony without looking for or receiving from the plaintiff a signal to back.

"7. The plaintiff as rear end flagman was not required nor entitled to give the engineer a signal to back for the purposes of switching as described in the testimony.

"8. The action of the conductor and engineer in causing the

---

* This statute in the amended form is published in *Corbett* v. *Boston & Maine Railroad,* 219 Mass. 351, at pages 352–355.

train to back without getting a signal from the plaintiff as rear end flagman so to do was not negligence.

"9. Upon all the evidence the jury is not warranted in finding that there was a practice or custom that freight trains engaged in switching movements should not back without getting from the rear end flagman a signal so to do."

"12. If the jury finds that the defendant's rules required the plaintiff as rear end flagman in going back to protect his train to walk between the rails of the track upon which his train was standing the plaintiff assumed the risk of being run into by train running on the same track."

"14. The plaintiff had no right to rely for his own safety on the observance of written or unwritten rules by his fellow employees or upon the assumption that they would look out for him."

"16. The plaintiff had no right under the rules of the defendant governing his conduct to wait until his train stopped before beginning to gather his tools and appliances and preparing himself for his duty as rear end flagman.

"17. If the plaintiff did not begin to get his tools and appliances and to prepare himself for performance of his duty as rear end flagman until his train stopped or after it stopped he violated the rules of the defendant governing his conduct and such violation constituted contributory negligence."

"19. If the plaintiff in violation of the rules governing his conduct remained in or about the caboose for a period of time sufficiently long to have enabled him to reach the point beyond where he was struck then he was negligent and the jury must find that such negligence was the sole cause of his injury and the plaintiff cannot recover."

The rulings were refused. The jury found for the plaintiff in the sum of $15,190; and the defendant alleged exceptions.

*M. G. Gonterman,* (*E. T. Broadhurst* with him,) for the defendant.
*J. L. Gray,* for the plaintiff.

CARROLL, J. The plaintiff, a flagman on one of the defendant's freight trains, about two o'clock on the morning of April 27, 1917, while in the performance of his duty of protecting the train, was injured by reason of its backing down upon him. The train left Bridgeport, Connecticut, and was on its way to Northampton in

this Commonwealth. It stopped at Congamond station in order that cars might be switched on to a side track, and while the trainmen were engaged in this operation, the plaintiff, who was about five car lengths distant from the rear of the train, was injured. The action is under the federal employers' liability act and the jury found for the plaintiff.

The defendant's motion for a directed verdict was denied properly. The plaintiff testified that after the train stopped he started to walk between the tracks to the south and had gone the distance of five car lengths when without warning the train was backed and he was hit by the "caboose" and thrown to the ground. There was evidence that it was the duty of the engineer, before proceeding to back the train, to give three short blasts of the whistle. While there was abundant evidence that this signal was given, the plaintiff testified he did not hear it, and although he admitted he paid no attention to the train after leaving it, the jury could have found that had the whistle been sounded he would have heard it, and that the failure to give the signal contributed to his injury. *Brusseau* v. *New York, New Haven, & Hartford Railroad,* 187 Mass. 84.

The plaintiff knew the train was to stop at Congamond station, that some of the cars were to be set off on a side track and the train backed. He also knew the location of the switch to the crossover track, that a train was following, and that it was necessary for him to go to a curve, a considerable distance south of the place where he was injured. The defendant's printed rules required the plaintiff, "When a train stops or is delayed, under circumstances in which it may be overtaken by a following train," to "go back immediately with stop signals a sufficient distance to insure full protection." After the train stopped it was the plaintiff's duty to go back at once a sufficient distance to protect it. The conductor, according to his testimony, left the car in which he and the plaintiff were riding when the train stopped and walked to the engine, a distance of thirty car lengths, and after talking with the engineer for ten minutes, walked back to the point where he could see the switch light and then gave the backup signal. If the conductor's evidence were believed, the jury could have found that the engineer might well have inferred that the plaintiff, in the exercise of his duty, was so far away, he was in

no danger of being struck while the train was backing to switch the cars on the side track. But notwithstanding this evidence the jury could say that the failure to blow the whistle as required by the defendant's rule, was the cause of the plaintiff's injury. The negligence of those in charge or control of the train was not a risk assumed by the plaintiff's contract of employment, and upon all the evidence the question of his assumption of the risk was for the jury. *Mackenzie* v. *New York Central & Hudson River Railroad,* 211 Mass. 586, 588. See *Seaboard Air Line Railway* v. *Horton,* 233 U. S. 492; *Jacobs* v. *Southern Railway,* 241 U. S. 229. Under the federal employers' liability act the contributory negligence of the plaintiff did not bar a recovery. U. S. St. 1908, c. 149, § 3, 35 U. S. Sts. at Large, 65, as amended by U. S. St. 1910, c. 143, 36 U. S. Sts. at Large, 291. This question was dealt with properly by the court.

For the purpose of proving the defendant's negligence the plaintiff was permitted to testify, subject to exception, that he had been told by one of the defendant's examiners that a train was not to move backwards until the signal was given by the flagman who was protecting it; and that when he was injured, the engineer had backed the train without receiving such signal. The defendant also requested a ruling that it was not negligence on the part of the conductor or engineer to cause the train to move in the direction of the plaintiff without first receiving a signal from him. This request was refused. The defendant's rules were in evidence and it was admitted that there was no written or printed rule requiring a signal from a flagman before backing a train. There is nothing in the record to show that the examiner referred to had authority, expressed or implied, to make such a rule or give such instruction, or to decide that the printed rules of the defendant should be so construed. All that appears is that he examined applicants for the positions of trainman and conductor, and as examiner he had no power to bind the defendant by his statement that such a rule was in operation. The defendant could not be charged with negligence for the violation of an alleged regulation established without its knowledge or authority. This evidence was not admissible for the purpose of proving the defendant's negligence, and as the jury may have found for the plaintiff on this ground, there was error in admitting it and in

refusing the defendant's request, as well as in the instructions given on this point.

The plaintiff further contended that the defendant was negligent because, according to his testimony, there was a practice that no train protected by a flagman should be backed until the signal came from him. Witnesses for the defendant stated that there was no written or unwritten rule, or any practice, which made it necessary for those in charge of a train to receive a signal from a flagman before backing. The record does not show when this practice, as claimed by the plaintiff, was initiated, to what extent it was followed, or on what part of the defendant's system it was in use. All that appears is the general statement that such a practice existed. Assuming, but without deciding, that the plaintiff was qualified to testify to the custom claimed, there was no evidence whatever to show that this method of transacting its business was known to the defendant or its officers, nor from which it could be inferred that it was assented to by them, and a particular method of moving its trains, adopted by employees without its knowledge or acquiescence, did not bind it. *Powers* v. *Boston & Maine Railroad,* 153 Mass. 188. *Massell* v. *Boston Elevated Railway,* 191 Mass. 491. See in this connection *Sawtelle* v. *Drew,* 122 Mass. 228; *Brady* v. *New York, New Haven, & Hartford Railroad,* 184 Mass. 225, 228, 229; *Conahan* v. *Fisher,* 233 Mass. 234.

The defendant asked the court to instruct the jury that, upon all the evidence, they could not find "there was a practice or custom that freight trains engaged in switching movements should not back without getting from the rear end flagman the signal so to do." The denial of this request was error.

*Exceptions sustained.*