MATTEO PAGANO *vs.* WORCESTER CONSOLIDATED STREET RAILWAY COMPANY.

Worcester.   September 26, 1928. — November 26, 1928.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Negligence,* Employer's liability: duty to warn, assumption of risk. *Evidence,* Relevancy and materiality, Competency. *Agency,* Scope of employment.

At the trial of an action against a street railway company by one employed by the defendant as a track laborer for personal injuries received when the plaintiff was struck by an automobile, there was evidence that the plaintiff was working under two men, as to whose authority or scope of employment there was no evidence other than could be implied from the fact that the first was denominated "the head boss" and the second "the second boss"; that when injured the plaintiff was engaged in sweeping dust toward the defendant's rail at a place in the highway much travelled by automobiles; that at each end of a stretch of one hundred feet a flagman had been placed; that, after the automobile which struck the plaintiff had passed one of the flagmen, the driver tried to "duck in and get ahead of another automobile . . . to wedge in into line," and in doing so struck the plaintiff. A verdict was ordered for the defendant. *Held,* that

(1) There was no evidence that through negligence the "boss" or the flagmen failed to anticipate such action of the driver of the automobile;

(2) Evidence that the "boss" told the plaintiff and his fellow work-

men, because of the heavy traffic, "to watch out that . . . [they] . . . didn't get hurt," and two or three times before the accident, but not at the moment of the accident, said, "Look out," was not sufficient to warrant a jury in finding that the defendant undertook to warn the laborers, particularly the plaintiff, against the danger to them or him of passing automobiles;

(3) There being no allegation of contributory negligence of the plaintiff in the defendant's answer, there was no error in excluding evidence offered by the plaintiff to show that he did not see the approaching automobile;

(4) It was proper to exclude testimony by a fellow workman of the plaintiff that he was accustomed to rely on warning by the "boss" and the "second boss" as to passing automobiles;

(5) It was proper to exclude a question by the plaintiff of the "boss", called by him in direct examination, as to the duties of the "second boss", there being no evidence that the witness had hired the "second boss" or the men, or that he had a greater knowledge of the "second boss's" contractual duties than had any one of his fellow workmen;

(6) A verdict for the defendant properly was ordered.

TORT for personal injuries. Writ dated June 4, 1927.

In the Superior Court, the action was tried before *Broadhurst,* J. Material evidence and exceptions are stated in the opinion. The judge ordered a verdict for the defendant. The plaintiff alleged exceptions.

*F. B. Spellman,* for the plaintiff.

*C. C. Milton,* for the defendant.

PIERCE, J. This is an action of tort to recover for personal injuries incurred by the plaintiff on July 10, 1926, while engaged as a track laborer in the service of the defendant. At the close of the evidence for the plaintiff, on the written motion of the defendant, the trial judge directed a verdict in its favor. The case is here on the plaintiff's exceptions to the directed verdict and to the exclusion of certain evidence.

In substance, counts one and two of the plaintiff's declaration allege that the defendant failed to furnish the plaintiff with a suitable and safe place in which to perform his work, in that it did not warn him of the presence and approach of the automobile which struck and injured him. The reported testimony of witnesses called for the plaintiff warranted the finding of the following facts: The plaintiff, at about 11 A.M. on July 10, 1926, while engaged with other laborers in laying

new tracks for the defendant in the main State road that leads from Worcester to Springfield, was struck by an automobile coming from Leicester at a point near the Leicester line in the city of Worcester.   When struck the plaintiff's back was toward the automobile, and before it hit him he had not seen it nor heard it nor been warned of its approach. The plaintiff was working under the personal supervision of a "boss," who did not see the colliding automobile because, at the moment of the accident, his oversight of the work required that he should be looking toward Worcester.   The day was bright, clear and sunny, and the place where the laborers were at work was at a switch which approximately was in the middle of the street.

Where the street railway was being repaired the space between the northerly side of the track and the northerly side of the road was surfaced with concrete which was smooth and ten or twelve feet in width.   There was some material on the side of the track and in a space between the northerly rail of the track and the concrete which the plaintiff was helping to clean up by sweeping the dirt against the rail.   At the place and time the traffic was very heavy, and automobiles came one right after the other in both directions over the concrete.   The roadway on the south side of the tracks was newly laid; it was closed for travel, and the only way traffic could go was on the side of the road north of the tracks.   A watchman, Hodgkins, with a flag stood at the Leicester end of the way under repair, at a point distant about seventy-five or eighty feet from the place of the accident and about one hundred feet from the Worcester end of the job, where one Romani was stationed with a flag.   The duty of Hodgkins was to keep automobiles coming on that side from going over the new track.   The duty of Romani was to regulate the traffic coming from the Worcester side.   Hodgkins testified that the automobile which struck the plaintiff, going six or seven miles an hour, passed the Leicester end of the line of automobiles and the driver "tries to work in there, to get into line, and in trying to work in, he had to go on where he shouldn't, but he had gone beyond me, when he done that"; that he "tried to duck in and get ahead of another automo-

bile. He tried to wedge in into line," and in doing so he struck the plaintiff and knocked him down.

"The plaintiff admits that the danger from passing automobiles was an open and obvious risk, but [contends that] he had a right to rely on the fact of his fellow-employees, Romani and Hodgkins, regulating the automobile traffic properly, and if either one of them negligently allowed automobiles to pass in the opposite direction at that place, that was some evidence of negligence on their part" for the jury. While the plaintiff assumed the obvious risks which are incidental to street employment of laborers, *Ashton* v. *Boston & Maine Railroad,* 222 Mass. 65; *Murray* v. *Nantasket Beach Steamboat Co.* 248 Mass. 587, he did not assume risks which arose in part from neglect of duty of fellow servants and in part from the neglect of a person or persons whose sole or principal duty was that of superintendence. *Bourdeau* v. *J. J. Prindiville Co.* 213 Mass. 145. *Joyce* v. *Power Construction Co.* 224 Mass. 496. See also G. L. c. 152, § 66. The facts reported, however, would not warrant the jury in finding that Hodgkins, Romani or Moran, the "boss," was negligent in failing to anticipate that the colliding automobile would be driven in an attempt to cut in to the line of automobiles or that in so doing the driver would "meet" an automobile coming in the opposite direction and injure any of the laborers at work in the street.

The plaintiff further, in substance, contends that the defendant voluntarily undertook to warn and protect its laborers through the care and supervision of the superintendent of the work; that the duty thus assumed was negligently performed by the "boss"; that the plaintiff relied upon the performance of the duty and was injured because of the negligence of the superintendent "boss." The evidence, that on the morning of the accident, "because there was a lot of automobiles going there," Moran, the "boss" of the "gang" of which the plaintiff was a member, "told us to watch out that we didn't get hurt" and two or three times before the accident, but not at the moment of the accident, said, "Look out," was not sufficient to warrant a jury in finding that the defendant undertook to warn the laborers,

particularly the plaintiff, against the danger to them or him of passing automobiles.

The refusal of the judge to receive the proffered testimony of the plaintiff to the effect that he did not see the car coming from Leicester which struck him was right.   The defendant offered no evidence and makes no contention that the plaintiff was guilty of contributory negligence.   Whether the plaintiff assumed the risk as part of his contract was a question of law, and not one of fact for the jury.

The question put to a witness for the plaintiff, Olivo, "Were you accustomed to rely on Moran's warning for passing automobiles and were you accustomed to rely on the subforeman Lombardi in reference to warnings about passing automobiles," was excluded rightly.   His reliance upon such warnings was not evidence that others relied thereon or that the defendant knew or should have known that there was a usage for the "boss" to give such warning to his men. *Howard* v. *New York, New Haven & Hartford Railroad,* 236 Mass. 370, 375.

Moran, called by the plaintiff, on direct examination testified that Lombardi's duties were to see that the men would tamp the ties properly.   Without knowledge of what the answer would be, the plaintiff then asked the witness: "Were these the only duties of Lombardi, that is, tamping ties?" On objection by the defendant and exclusion of the question by the judge, the plaintiff made an "offer of proof to show that Lombardi's duties in addition to those enumerated, that is, tamping ties, was to give warning to the men actually employed on the job, of the danger from passing traffic, if that comprised any portion of his duties."   The judge allowed the plaintiff to ask the witness to describe fully anything that Lombardi did if he had not already fully described it.   Lombardi, called by the plaintiff, subsequently testified: "He was telling the men what to do, giving them orders. He had nothing to do with the traffic that passed back and forth."   There is no evidence in the case as to the authority of Moran other than can be implied or inferred from the mere fact that he was "the head boss" and Lombardi was "the second boss."   Apart from the evidence that he super-

vised the performance of the manual work of the laborers, there is no evidence that he hired "the second boss" or the men, nor that he had a greater knowledge of the contractual duties of Lombardi than any one on the job had. The evidence was excluded rightly.

The motion for a directed verdict was properly allowed.

*Exceptions overruled.*