## John Shea *vs.* Carmino Frangioso.

Suffolk.    November 16, 1932. — January 4, 1933.

Present: Rugg, C.J., Crosby, Pierce, Field, & Lummus, JJ.

*Negligence*, Res ipsa loquitur, Steam shovel. *Evidence*, Presumptions and burden of proof.

At the trial of an action by a driver of a team against the owner of a steam shovel for personal injuries sustained by the plaintiff when a stone weighing more than one hundred pounds fell from the bucket of the shovel and struck the plaintiff while his cart was being loaded with material excavated by the shovel, there was evidence that the plaintiff was experienced in the work of hauling gravel and sand and at times had worked under a steam shovel; that he was familiar with the particular material that was being dug up and knew that there were rocks in it; that the stone was round and was on the very nose of the shovel, and fell out when the shovel swung around over the team and stopped with a jar, not shown to have been greater than the jar ordinarily occurring upon stopping the heavy shovel in its swing; that sometimes rocks and stones would tumble from the bucket be-

cause of jerks and jars occurring in the process of swinging the shovel and stopping it; and that, for that reason, operators of the shovels, who have no opportunity to look into the bucket, "take it as easy as possible." *Held*, that

(1) In the circumstances, the defendant owed no duty to the plaintiff to warn him of any dangers which were commonly incidental to the movements of the machine;

(2) The doctrine of *res ipsa loquitur* was not applicable;

(3) There was no evidence of negligence on the part of the defendant;

(4) The plaintiff could not recover.

TORT. Writ dated August 9, 1928.

The action was tried in the Superior Court before *T. J. Hammond*, J. Material evidence is stated in the opinion. The judge denied a motion by the defendant that a verdict be ordered in his favor. Subject to leave reserved under G. L. (Ter. Ed.) c. 231, § 120, a verdict for the plaintiff in the sum of $4,000 was recorded. The defendant alleged exceptions.

*J. J. Curran*, for the defendant.

*R. B. Coulter*, for the plaintiff.

PIERCE, J. This is an action of tort against the defendant under the provision of G. L. (Ter. Ed.) c. 152, § 15. At the conclusion of the evidence the defendant filed a motion for a directed verdict, the motion was denied, and the jury returned a verdict for the plaintiff. The case is before this court on the exceptions of the defendant duly taken to the denial of the aforesaid motion. G. L. (Ter. Ed.) c. 231, § 120.

On the undisputed testimony of witnesses for the plaintiff and defendant the facts in support of the plaintiff's action are in substance as follows: For fifteen years John Shea, the plaintiff, had worked hauling gravel and sand, and in connection therewith had at times worked under a steam shovel. For "two or three days" or for "two or three weeks, probably" before his accident which occurred on June 18, 1927, he was working in a similar service for the A. A. Wills Contracting Company, which was insured under the workmen's compensation act. At and before the time of the said accident one Thomas S. Richardson, as trustee for the Elliott land trust, held title, as trustee, to

Wendell Park in Milton, which he was developing as a real estate venture, and had a foreman to whom he usually gave orders, who was in charge of laborers for street work to be done in the course of said development. Richardson had been, but was not at the time of the accident, insured, and at that time, as trustee, had no compensation insurance of any kind. The defendant was covered by a policy of insurance under the provisions of the workmen's compensation act. The plaintiff received a personal injury on June 18, 1927, under circumstances hereinafter stated, and this action is brought by the insurer of his employer under the workmen's compensation act, after paying compensation to Shea.

Prior to June 18, 1927, Richardson had hired the defendant to do some excavating with a steam shovel on the land he was developing, and had also hired some teams from the A. A. Wills Contracting Company "to carry the material away from the steam shovel . . . the material was dirt, rock and stone — everything that was taken out." Shea testified, in substance, that "he backed his team to a position where he thought it would come under the shovel when it swung around," and the operator of the shovel then dipped his shovel to pick up a load; that just before the accident, he was sitting on his cart seat facing half to the right toward his horses, waiting for the shovel to pick up a load and dump it into his cart; that the beam of the shovel was fifteen feet long; that when the shovel was lifted and swung around it was swung at about five feet above his head and over the cart; that immediately preceding the accident the shovel was loaded, and swung around over the middle of the cart; that it stopped with a jar and a stone weighing over one hundred pounds came out of the bucket before the load was dumped, came down, struck the tip cart and then struck him on the right hand side of the spine; "that the stone came out, over the top, immediately upon the stopping of the shovel; that he fainted and was taken first to a doctor, then to a hospital." He further testified "that he had seen the kind of material that this steam shovel was digging up; that he was familiar

with the particular material that was being dug up; that
he knew that rocks were in it; that the shovel had to be
swung around over his cart"; that he saw the stone when
the shovel was being raised from the hole; that he saw
the stone "when the shovel was raising in the air," and
saw it when the shovel was over to the right; that the
stone came off when the shovel was coming around; that
he did not see it before it came off but did see it when it
was just striking the top of the cart; that the stone was
partly round and would probably roll a little; that it was
on the right hand side of the shovel, on the very nose of
the shovel; that the shovel made a jar when the stone
tumbled out; "that when a shovel full of dirt is swung
around, it makes quite a noise and then when it stops
there is some jar"; that the shovel was swung a distance
of ten feet from where it began to swing and that the stone
was over the back of his cart when it came off the shovel.

The operator of the steam shovel testified, in substance,
that he saw the stone when it fell out; that the position
of the plaintiff's cart was a satisfactory one for dumping;
that there was a jar or jerk when the shovel came to a stop;
that it was pretty hard to stop a big machine like the one
in use which weighed twenty-eight tons without any jar
at all, but in the instant case the jar or jerk was no more
than ordinary; that his job was to pull the cord which
emptied the bucket. He further stated: "when we are
working around teams you have to be careful because we
have to have in mind that jerks and jars may throw rocks
on people below and we have to safeguard yourself against
that because there is a small body on small teams; that
they have no opportunity to look into the bucket and that
they take it [move it] as easy as possible." There is no
evidence in the record to the effect that the beam and
shovel were moved from the place of loading to the place
of discharge at the cart as respects jerks and jars in other
than the usual and ordinary manner.

On the above facts taken in their aspect most favorable ·
to the plaintiff's case, it is plain that the principle of *res ipsa
loquitur* is not applicable. The plaintiff from long experi-

ence knew and appreciated the dangers which attended the operation of the steam shovel, at least in so far as its movements related to the filling of the bucket with "material," to the placing of this bucket over his cart, and to the discharge of its contents into the cart. In these circumstances the defendant owed no duty to the plaintiff to warn him of any dangers which were commonly incidental to the movements of the machine, and of the fact shown by the record that there might be a tumbling of rocks and stones from the bucket in the process of swinging the beam and stopping the machine at the place for the discharge of the contents of the bucket. *Fitzgerald* v. *Connecticut River Paper Co.* 155 Mass. 155, 159. No claim as shown by the record is made by the plaintiff that the defendant was negligent in the operation of the machine save in the manner of stopping the bucket and in his failure to warn the plaintiff of the fact shown by the record that stones and rocks sometimes "will go over the sides of the wagon." It is plain that the falling of the rock upon the side of the wagon was not an event of such unusual character as in itself unexplained was *prima facie* proof of the defendant's negligence. *Hofnauer* v. *R. H. White Co.* 186 Mass. 47. *Kimball* v. *George A. Fuller Co.* 258 Mass. 232. It follows that the defendant's exceptions must be sustained, and judgment entered for the defendant.

*So ordered.*