RICHARD F. ENGEL *vs.* THE BOSTON ICE COMPANY.

Suffolk.    February 7, 1936. — October 27, 1936.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Negligence,* One owning or controlling real estate, In operation of crane, Assumption of risk, Toward employee of independent contractor, Contributory.

The circumstances of the employment of a painter by a subcontractor to paint a rail of tracks used by an electric crane in an ice plant did not require a conclusion of law that he contractually assumed the risk of a failure by the operator of the crane, an employee of the owner of the

plant, to stop the crane before reaching him or to warn him of its approach as he was at work, so as to limit the common law duty of the owner to use reasonable care in this particular in the operation of the crane.

A painter, employed by a subcontractor to paint a rail of tracks of an electric crane in an ice plant and injured when the operator of the crane, an employee of the owner of the plant, did not warn him of the crane's approach and ran over his hand, had not voluntarily assumed the risk of such injury as a matter of law, and a ruling that he was guilty of contributory negligence was not required, where it appeared that he was fifteen and a half years of age, that the crane was not in operation when he began his work, and that the accident happened within an hour and a half thereafter.

TORT. Writ in the Superior Court dated December 10, 1930.

The action was tried before *Sisk*, J.

*A. W. Rockwood*, (*R. B. Perkins* with him,) for the plaintiff.

*W. I. Badger*, (*D. W. Kelley* with him,) for the defendant.

FIELD, J. This is an action of tort brought by a minor by his next friend to recover compensation for personal injuries sustained by him. The trial judge, subject to the plaintiff's exception, directed a verdict for the defendant. At the request of the plaintiff he reported the case for the determination of this court upon the question whether the plaintiff should have been allowed to go to the jury either upon all the evidence in the case or upon such evidence "taken together with such of the testimony as was wrongfully . . . excluded or struck out by . . . [him] subject to the plaintiff's exceptions." By the terms of the report "No issue as to pleadings is involved in the questions raised" therein.

The following facts were admitted or could have been found on the evidence. While the plaintiff was rightfully on the defendant's premises engaged in painting along the rails on which ran an electric crane "then under the control of and being operated by the defendant ice company through its servants, agents or employees," his left hand was injured by a wheel of the crane. The plaintiff was in the employ of his father in doing the painting. The father was a subcontractor for such painting under an independ-

ent contractor having a contract with the defendant for the construction of an ice refrigerating plant, which at the time of the accident was "in the final stages of completion." The general contractor told the plaintiff's employer that the defendant would not accept the job unless the rails were painted. The plaintiff's employer went to the plant with the plaintiff and another painter to do the painting, and saw that the plant was in operation. The employer talked, as he testified, with the "man in charge of the machinery," who was, "as he understood, the engineer of the plant," about the danger of doing the painting while the plant was in operation. (This "engineer," however, testified that he was a "stationary engineer" "employed by the defendant in conducting its business.") The plaintiff's employer also talked with a crane operator about the danger of doing the painting while a crane was in operation. The employer received from each of these persons some assurance of protection to the painters and thereupon directed them to go ahead with the work.

The plant was one hundred fifty or one hundred sixty feet long. Two overhead tracks for electric cranes extended the entire length of the plant. Each track consisted of two metal rails, four or five inches high, twenty or thirty feet apart and ten or twelve feet above the ground, resting on heavy beams running in the same direction and supported by posts about fifteen feet apart. The cranes consisted of wheels "something like railroad car wheels with two flanges instead of one," running on two rails and connected by a bar supporting an electric motor to furnish power to move the crane and a hoisting apparatus from which boxes containing water or ice were suspended. A crane is controlled by an operator who walks along on the ground with the crane and "in case anything happens he pulls something and the crane stops right away."

The plaintiff testified to the circumstances of the accident in substance as follows: He was working at one end of the track which was nearer to the office and machinery of the plant, hereinafter referred to as the plant. When he began working, the crane was at the other end of the

track. The plaintiff was standing with his back to the crane on a stepladder outside the tracks on the side nearer the plant, painting with his right hand that side of the rail nearest the plant, and holding on to the top of the rail with his left hand. The stepladder "came up within three feet of the bottom of the track." While the plaintiff was so engaged the crane came along the track and one of its wheels ran upon and injured the plaintiff's left hand. The crane operator stopped the crane "immediately and then backed it up to get it off . . . [the plaintiff's] hand." From the testimony of other witnesses it could have been found that the crane operator, as he walked along the ground with the crane, though his view of the plaintiff was obstructed by the boxes suspended from the crane, could have seen the plaintiff on the stepladder "as far as his chest," but there was no evidence that he could have seen the position of the plaintiff's left hand. Other evidence is referred to later.

First. The direction of a verdict for the defendant on the evidence in the case considered without reference to the evidence excluded or struck out by the trial judge subject to the exceptions of the plaintiff was error.

The plaintiff does not contend that the defendant's machinery or structures were defective. Liability of the defendant to the plaintiff, if any, rests upon negligence of the defendant or its employees in operating the electric crane. The defendant contends, however, that the plaintiff assumed the risk of injury from such operation and that there was no evidence of negligence of the defendant or its employees. There is no contention that the liability of the defendant is affected by the workmen's compensation law. G. L. (Ter. Ed.) c. 152, §§ 18, 66.

1. The evidence warranted a finding that the defendant was negligent in the operation of the electric crane by its employee, the crane operator.

There was evidence that as the electric crane was travelling along the overhead track one wheel thereof ran upon the plaintiff's left hand and injured it. It could have been found not only that the crane was not brought to a

stop before it reached the plaintiff but also that the plaintiff was not warned of its approach.

So far as the defendant's contention that the plaintiff assumed the risk of injury from the operation of the crane is based on the doctrine sometimes described as contractual assumption of risk, it relates to the issue of the defendant's negligence. *Sylvain* v. *Boston & Maine Railroad*, 280 Mass. 503, 505.. This doctrine is that an employer owes no duty to one entering his employment to change the conditions of the premises, equipment or methods of operation which obviously existed and were apparently contemplated by the parties when the contract of service was made and, therefore, that there is no negligence in continuing them. *Cronan* v. *Armitage*, 285 Mass. 520, 526. *Hietala* v. *Boston & Albany Railroad*, 295 Mass. 186, 188–189. But the limitation upon the duty of the employer does not relieve him from the duty of using reasonable care to protect the employee from risks not ordinarily incidental to the continuance of such obvious conditions. No agreement by the employee to expose himself to such risks is implied from his contract of employment. He does not contractually assume the risk of subsequent negligence of the defendant. *Wagner* v. *Boston Elevated Railway*, 188 Mass. 437, 442. *Howard* v. *New York, New Haven & Hartford Railroad*, 236 Mass. 370, 374. *Hanley* v. *Boston & Maine Railroad*, 286 Mass. 390, 397–398. *Hietala* v. *Boston & Albany Railroad*, 295 Mass. 186, 188–189. See also *Leary* v. *Boston & Albany Railroad*, 139 Mass. 580, 586. Like rules govern the duty of an owner or occupier of the premises to an employee of an independent contractor or of his subcontractor working on the premises under a contract between such owner or occupier and the independent contractor. *Pettingill* v. *William Porter & Son, Inc.* 219 Mass. 347, 349. *Brogna* v. *Capodilupo*, 279 Mass. 586, 590. Such an employee is on the premises in pursuance of the invitation given to him by reason of such contract, and the duty of the owner or occupier of the premises is commensurate with such invitation. *Sullivan* v. *New Bedford Gas & Edison Light Co.* 190 Mass. 288, 293. *Crimmins* v. *Booth,*

202 Mass. 17, 22. To such an employee the owner or occupier of the premises is liable for his own negligence and that of his own employees — who are not fellow servants of employees of the independent contractor or subcontractor, *Wagner* v. *Boston Elevated Railway,* 188 Mass. 437, 441 — in respect to risks not ordinarily incidental to obviously existing conditions. See *Demaris* v. *Van Leeuwen,* 283 Mass. 169, 173.

The evidence warranted findings that the risk to the plaintiff of the operation of the crane, in the circumstances shown, without its being brought to a stop or warning being given the plaintiff of its approach was not ordinarily incidental to the conditions of the premises, equipment or methods of operation obviously existing either at the time of the contract between the defendant and the independent contractor or at the time the plaintiff began work on the premises, and that the defendant's crane operator was negligent in operating the crane in this manner.

It could have been found on the evidence that the crane moved slowly, that it was at all times under the control of the crane operator, who walked along on the ground near it as it progressed, and that he could bring it to a stop almost immediately if occasion required. There was evidence that it was the practice in this plant for the operator of a crane to warn persons working in its path of its approach, and also evidence, somewhat limited in scope but admitted without objection (see *Dolan* v. *Boott Cotton Mills,* 185 Mass. 576, 579–580), that this practice was customary in other ice refrigerating plants. Evidence of the practice in the defendant's plant and in other plants, even if such practice was not known to the plaintiff, tended to show that operation of the crane without warning of its approach to persons working in its path was not ordinarily incidental to the obvious conditions of the defendant's premises, equipment or methods of operating its plant. This evidence in connection with the testimony descriptive of the crane and of the way in which its movements were controlled warranted a finding that the risk of injury to the plaintiff from the operation of the crane without its

being brought to a stop before reaching him or warning being given him of its approach was not ordinarily incidental to obviously existing conditions, and that for this reason, if for no other, the plaintiff did not contractually assume such risk so as to limit the common law duty of the defendant to the plaintiff to use reasonable care in this particular in the operation of the crane. *Wagner* v. *Boston Elevated Railway*, 188 Mass. 437, 442. *Cronan* v. *Armitage*, 285 Mass. 520, 527. Compare *Shea* v. *Frangioso*, 281 Mass. 412, 416; *O'Meara* v. *Adams*, 283 Mass. 396, 402; *Hietala* v. *Boston & Albany Railroad*, 295 Mass. 186, 188–189, 194.

Furthermore, it could have been found on the evidence that in the exercise of reasonable care in the operation of the crane the crane operator should have known that the plaintiff was on the stepladder at the side of and close to the track, and that the general noise of the plant in operation would prevent him from hearing the crane as it approached him, and should have recognized that operating the crane on the track near the stepladder without its being brought to a stop before reaching him or warning being given him of its approach involved an unreasonable risk of harm to him. See *McDermott* v. *Sallaway*, 198 Mass. 517, 520; *Stevens* v. *Reyn*, 220 Mass. 332; *Barber* v. *C. W. H. Moulton Ladder Co.* 231 Mass. 507, 511; Am. Law Inst. Restatement: Torts, §§ 284, 291. Apart from any limitation upon the defendant's duty by contract, the failure of the crane operator, in the circumstances shown, either to bring the crane to a stop or to warn the plaintiff of its approach could be found to constitute negligence. See *McCarney* v. *Bettendorf Axle Co.* 156 Iowa, 418, 437–438; *Edsberg* v. *Baldwin Locomotive Works*, 240 Penn. St. 614, 617–618. See also *Hanley* v. *Boston & Maine Railroad*, 286 Mass. 390, 396–397; *Hietala* v. *Boston & Albany Railroad*, 295 Mass. 186, 193–194. Though a particular practice adopted by the employees of the defendant without its knowledge or acquiescence would not enlarge the defendant's duty (*Howard* v. *New York, New Haven & Hartford Railroad*, 236 Mass. 370, 375), failure to take

precautions customarily taken in ice refrigerating plants was some evidence of negligence. See *McCrea* v. *Beverly Gas & Electric Co.* 216 Mass. 495, 498; *Hecht* v. *Boston Wharf Co.* 220 Mass. 397, 405; *Cronan* v. *Armitage,* 285 Mass. 520, 525; *Hanley* v. *Boston & Maine Railroad,* 286 Mass. 390, 398–399. It was not essential to a finding of negligence that the result in its precise form of the crane operator's conduct should have been foreseeable by him since in its general nature, as could have been found, it was a probable consequence of such conduct. *Perlman* v. *Burrows,* 270 Mass. 182, 184. And the fact that the step-ladder on which the plaintiff was standing was at one side of the track and not directly in the path of the crane did not preclude a finding that he was within the field of probable danger. See *Tashjian* v. *Worcester Consolidated Railway,* 177 Mass. 75, 81; *McDermott* v. *Sallaway,* 198 Mass. 517, 520; *Stacy* v. *Dorchester Awning Co. Inc.* 290 Mass. 356, 359. *Murray* v. *Boston & Maine Railroad,* 216 Mass. 591, is distinguishable on the ground, among others, that there was no evidence in that case that the defendant's agent knew that the plaintiff was in a place of danger (page 593); and *Pagano* v. *Worcester Consolidated Street Railway,* 265 Mass. 89, is distinguishable on the ground that danger to the plaintiff was not foreseeable by the defendant's agent (page 92). Cases where machinery in motion in a fixed position gives adequate warning of attendant dangers are also distinguishable. See, for example, *Pettingill* v. *William Porter & Son, Inc.* 219 Mass. 347.

2. It could not rightly have been ruled as matter of law that recovery by the plaintiff was barred on the doctrine of voluntary assumption of risk. The defendant had the burden of establishing this defence. *Sylvain* v. *Boston & Maine Railroad,* 280 Mass. 503, 505. According to this doctrine the plaintiff cannot recover for personal injuries sustained by him as the result of dangerous conditions, even though they were not contemplated by the contract of employment, if he voluntarily continued to work under such conditions with knowledge and full appreciation of the danger. *Hietala* v. *Boston & Albany Railroad,* 295 Mass.

186, 189–190. See also *Fitzgerald* v. *Connecticut River Paper Co.* 155 Mass. 155. While a servant ordinarily "is to be subjected only to the hazards necessarily incident to his employment, if he knows that proper precautions have been neglected, and still knowingly consents to incur the risk to which he will be exposed thereby, his assent dispenses with the duty of the master to take such precautions." *Leary* v. *Boston & Albany Railroad,* 139 Mass. 580, 584. These principles are applicable to the present case though the plaintiff was not the servant of the defendant. *Wagner* v. *Boston Elevated Railway,* 188 Mass. 437, 441. On the plaintiff's testimony, by which he is bound, he was in a position of obvious danger if the crane was operated over the rail at the place where his hand rested, and he knew that a crane was being operated on the other track. But he also testified that he was about fifteen and a half years old (see *Boutlier* v. *Malden,* 226 Mass. 479, 485), that he had not worked at the defendant's plant before the day of the accident, that he had worked there about an hour and a half before the accident occurred, and that the crane on the track where he was working was not being operated. A finding was not required that the plaintiff fully appreciated the danger that the crane would be operated on this track and that if it was so operated the crane operator would not take precautions for the plaintiff's safety — which might be found to be proper — by bringing the crane to a stop before it reached him or warning him of its approach. This is not one of the unusual cases where it can be ruled as matter of law that risk of injury was voluntarily assumed. See *Oswald* v. *Donohue,* 215 Mass. 574, 575.

3. The defendant apparently does not contend that, independent of assumption of risk, the evidence required a finding that the plaintiff was guilty of contributory negligence. However, voluntary assumption of risk and contributory negligence are closely related (see *Hietala* v. *Boston & Albany Railroad,* 295 Mass. 186, 189–190), and the evidence already considered in its bearing on the issue of voluntary assumption of risk also bears upon the

issue of contributory negligence. Furthermore, there was evidence that the plaintiff while painting was holding on to the rail to keep the stepladder from falling over and it could have been inferred from all the evidence that the plaintiff was in a proper position to do the work in which he was engaged. And there was evidence, including testimony of the plaintiff, that the crane in operation could not be heard above the general noise of the plant. But there was also evidence tending to show that a spoken warning of the approach of the crane, if given, could have been heard by the plaintiff above such general noise. The plaintiff testified that when he was painting "all at once . . . [he] didn't hear nothing coming at all, and before . . . [he] knew it the wheel was on top of . . . [his] hand." Even if there was some duty on the plaintiff to use his eyes as well as his ears to learn whether the crane was in operation and was approaching him, the extent of that duty depended on the circumstances of the case, including the nature of the plaintiff's work, and he could rely somewhat on the defendant and its employees using proper precautions for his safety if the crane was put in operation. *Santore* v. *New York Central & Hudson River Railroad*, 203 Mass. 437, 440–442, and cases cited. The burden of proof that the plaintiff failed to exercise due care rested on the defendant. G. L. (Ter. Ed.) c. 231, § 85. The testimony of the plaintiff, by which he is bound, and the other evidence in the case upon which he must rely to establish his case, did not as matter of law require a finding that he was guilty of contributory negligence.

4. Evidence of assurances of protection of the plaintiff given to his employer by the "engineer" and by a crane operator was admitted without objection. The evidence was obscure as to whether this was the crane operator who operated the crane by which the plaintiff's hand was injured. However, questions relating to the authority of these persons to bind the defendant by such assurances of protection and relating to the legal effect in other aspects of these assurances need not be considered, since, apart from them, there was a case for the jury. Evidence of other

assurances of protection was excluded or struck out subject to the plaintiff's exceptions.

Second. Since it was error to direct a verdict for the defendant on the evidence in the case, considered without reference to the evidence excluded or struck out by the trial judge subject to the exceptions of the plaintiff, it is unnecessary to decide whether there was error in excluding or striking out such evidence, or to consider such evidence in connection with the motion for a directed verdict.

It follows that in accordance with the terms of the report there is to be a new trial.

*So ordered.*