NORA J. REIDY, administratrix, *vs.* CROMPTON AND
KNOWLES LOOM WORKS.

Worcester.   September 26, 1944. — April 6, 1945.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Negligence,* Employer's liability: place of work, dust, warning, assumption of risk. *Proximate Cause. Practice, Civil,* Discretionary control of evidence.

Evidence, that for several years an employee of the proprietor of a foundry, not insured under the workmen's compensation act, worked in a place filled with dust containing invisible particles of silica, and before 1943 contracted silicosis from inhaling it; that no protection from the dust was furnished the employee and no warning of the danger attendant upon inhaling it was given him; and that the employee did not know of such danger but the employer did know or should have known of it, warranted a finding of negligence of the employer toward the employee: a finding that the employee "contractually" assumed the risk of injury from inhalation of the dust was not required.

A finding was warranted that an employee's working for several years in a place filled with dust containing silica was a proximate cause of his contracting silicosis and also tuberculosis, to which he was "a more ready prey" because of the silicosis.

In an action by an employee against his employer based on conditions in the plaintiff's place of work in a foundry, evidence as to conditions in other foundries might properly be excluded in the discretion of the trial judge as tending to raise collateral issues.

TORT.   Writ in the Superior Court dated June 5, 1934.

The action was tried before *Swift,* J.

*G. B. Rowell,* for the defendant.

*F. P. McKeon, (Nunziato Fusaro* with him,) for the plaintiff.

SPALDING, J.   Michael J. Reidy during his lifetime brought this action of tort to recover for personal injuries sustained while in the employ of the defendant corporation, which was not insured under the workmen's compensation act.   Following the death of Reidy, his widow, who was his administratrix, was admitted as the party plaintiff to prosecute the action.   The case was tried to a jury and

a verdict was returned for the plaintiff. The case is here on the defendant's exceptions to a denial of its motion for a directed verdict, to the judge's refusal to grant certain requests for instructions, to portions of the charge, and to numerous rulings relating to the admission and exclusion of evidence.

The evidence viewed in its aspect most favorable to the plaintiff warranted the jury in finding the following facts:. The plaintiff's intestate, hereinafter called the deceased, was employed by the defendant from 1918 to July 5, 1933. Down to 1932 he was one of a group of men assigned to work at various jobs in the defendant's foundry. During the greater portion of this period his duties included the transporting of coke, scrap iron, limestone and sand to the stack room in the foundry, and the shoveling of coke and other materials into the furnaces. He was also called upon from time to time to repair and reline the stacks. This necessitated his entering the stacks where he would reline the sections inside which had burnt away and would patch up the cracks with fire clay (which consisted of sand and clay) and "silica rock."

For several years prior to the fall of 1932 he was exposed "to an excessive amount of dust and sand and gas fumes caused by a back-draft in the furnace"; "the place was filled with gas and dirt most of the time." On windy days there was so much dust in the air that one man could not be distinguished from another. When the deceased would return home from work he "would be covered with a film of dust"; it "would be in the hair . . . eyebrows . . . [and] moustache." Some of the materials used where the deceased worked contained silica. One of these materials, namely, foundry sand, contained a "very high content of silica." Silica "cannot be seen with the naked eye or even with the aid of the ordinary microscope but can only be determined by special apparatus." The defendant knew that dust containing silica was harmful. Prior to 1928 there were no fans to eliminate the dust and gases in the place where the deceased worked, but during that year fans were installed. These fans were inadequate and out of

order most of the time.   The deceased complained of this condition to the foreman some time in 1930 and at other times thereafter and was assured that it would be taken care of, but nothing was done about it.   This condition existed down to 1932 when the deceased was transferred to the job of operating an elevator in the foundry.   The elevator was near the stack room and the deceased carried "the stuff" from the first to the second floor.   Masks or respirators for the purpose of eliminating the inhalation of dangerous dust were used by workers in certain parts of the foundry since 1920, but they were not worn by those employed where the deceased worked.

On July 5, 1933, [1] the deceased collapsed while at his work.   Shortly thereafter he was sent to a hospital where he remained until his death on December 18, 1937, at sixty-eight years of age.   His medical history showed that since the latter part of 1929 he had suffered loss of weight and appetite; and that he slept poorly and had a bad cough.   There was expert medical testimony that X-ray films taken after his admission to the hospital disclosed a far advanced case of pulmonary tuberculosis superimposed on a disease of the lungs which was "fairly characteristic of silicosis"; that the hospital record indicated that the deceased "had marked clubbing of the fingers" which is also characteristic of silicosis; that silicosis is a disease of the lungs resulting from the inhalation of silica dust; that the deceased at the time of his admission to the hospital was suffering from silicosis which was undoubtedly the result of inhalation of dust containing free silica; and that the silicotic changes within the lungs "made him a more ready prey to infection of tuberculosis, so that he came down with tuberculosis readily and subsequently . . . died."

1. Since the defendant was not insured under the workmen's compensation act, the only question raised by the defendant's motion for a directed verdict is whether there was evidence of negligence of the defendant which contrib-

---

[1] The judge charged the jury that it was agreed that this was the date of the injury, and this statement was not challenged by either party.

uted to cause an injury to the deceased. *McGonigle* v.
*O'Neill*, 240 Mass. 262. *Sylvain* v. *Boston & Maine Rail-
road*, 280 Mass. 503. *Walsh* v. *Boston & Maine Railroad*,
284 Mass. 250. See now St. 1943, c. 529, § 9A. The mo-
tion was properly denied. On the facts set forth above the
defendant could be found to be negligent in setting the
deceased at work in a dangerous place without protection
or warning. *Roberts* v. *Frank's Inc.* 314 Mass. 42, 45.
*Wood* v. *Canadian Imperial Dry Inc.* 296 Mass. 80, 82.
*Engel* v. *Boston Ice Co.* 295 Mass. 428. *Watkins* v. *New
York, New Haven & Hartford Railroad*, 290 Mass. 448.
*Cronan* v. *Armitage*, 285 Mass. 520. *Bernabeo* v. *Kaulback*,
226 Mass. 128, 130. *Leary* v. *Boston & Albany Railroad*,
139 Mass. 580, 584. "It is the duty of an employer who
puts an employee to work in a place of danger that is
known or should be known by him, to give to the employee
such instructions and warnings as are reasonably required
by the youth, inexperience or want of capacity of the em-
ployee. . . . An employer is not relieved of such duty by
the fact that the conditions constituting the danger are
obvious, if the employee does not know or appreciate, and
reasonably should not know or appreciate, the danger thus
created. . . . A danger that could be apprehended only by
persons possessing special experience or scientific knowledge
is not so obvious as to render unnecessary a warning to an
employee who did not have such knowledge or experience.
. . . A person engaged in a business that in its ordinary
operation involves dangers to the health of employees en-
gaged therein has a duty to inform himself concerning such
dangers." *Cotoia* v. *Seale*, 306 Mass. 101, 103. *Thompson*
v. *United Laboratories Co.* 221 Mass. 276. Where there is a
duty to warn and no warning is given, the defendant may
be found to be negligent even though the danger is one that
the defendant in the ordinary course of its business cannot
avoid. *Wood* v. *Canadian Imperial Dry Inc.* 296 Mass. 80,
83. The foregoing principles are applicable where an em-
ployer places and continues an employee at work for a sub-
stantial length of time under conditions which, in the ab-
sence of appropriate precautions, are calculated to engender

a disease of a serious and injurious nature. *Zajkowski* v. *American Steel & Wire Co.* 258 Fed. 9, 11. *Thompson* v. *United Laboratories Co.* 221 Mass. 276, 280. Actions for personal injury arising from disease or harm to health contracted in the course of one's employment and without physical impact, where other elements of liability are present, may be maintained at common law. *Cotoia* v. *Seale*, 306 Mass. 101. *Madden's Case*, 222 Mass. 487, 491. *Thompson* v. *United Laboratories Co.* 221 Mass. 276. *Hurle's Case*, 217 Mass. 223, 224. *Jacque* v. *Locke Insulator Corp.* 70 Fed. (2d) 680, 683. *Cox* v. *American Agricultural Chemical Co.* 24 R. I. 503. *Fox* v. *Peninsular White Lead & Color Works*, 84 Mich. 676, 682. *Wagner* v. *H. W. Jayne Chemical Co.* 147 Penn. St. 475. *Clark* v. *Banner Grain Co.* 195 Minn. 44, 51.

Under this principle liability has been imposed on the employer by reason of the inhalation of injurious fumes or dust by the employee in the course of his employment. *Thompson* v. *United Laboratories Co.* 221 Mass. 276. *Shea* v. *Glendale Elastic Fabrics Co.* 162 Mass. 463. *Jacque* v. *Locke Insulator Corp.* 70 Fed. (2d) 680, 683. See *Maggelet's Case*, 228 Mass. 57, 60.

It cannot be said, as the defendant contends, that the plaintiff cannot recover as matter of law because of contractual assumption of the risk by the deceased. Since the injury complained of occurred prior to the enactment of St. 1943, c. 529, § 9A, amending G. L. (Ter. Ed.) c. 152, § 66, this defence was open, or, speaking more accurately, if proved, would have excused the defendant from the duty of care with respect to the risk assumed. *Taylor* v. *Newcomb Baking Co.* 317 Mass. 609. This doctrine has been fully set forth in numerous decisions of this court and need not be restated. See *Crimmins* v. *Booth*, 202 Mass. 17, 22, 23; *Sylvain* v. *Boston & Maine Railroad*, 280 Mass. 503, 505; *Cronan* v. *Armitage*, 285 Mass. 520; *Engel* v. *Boston Ice Co.* 295 Mass. 428, 432; *Keough* v. *E. M. Loew's, Inc.* 303 Mass. 364; *Lakube* v. *Cohen*, 304 Mass. 156, 161; *Enga* v. *Sparks*, 315 Mass. 120, 125. As these decisions point out, the employee assumes the obvious risks of his

employment, but not those that are hidden or concealed. Although the deceased unquestionably knew of the presence of dust in the place where he worked, the jury could have found that the dangers from the inhalation of dust containing silica were not known to him but were or ought to have been known to the defendant. *Thompson* v. *United Laboratories Co.* 221 Mass. 276, 280. *Cotoia* v. *Seale,* 306 Mass. 101, 103.

Nor could it be said as matter of law that there was no causal connection between the diseases from which the deceased suffered and his working conditions. The jury could have found that the deceased worked for many years in the presence of a considerable amount of dust which contained silica; that silica was injurious to health; that due to these conditions the deceased contracted silicosis; and that this induced tuberculosis which incapacitated him and eventually caused his death.

2. The defendant excepted to the refusal by the judge to grant certain of its requests for instructions.[1] Those numbered 4, 5, 11 and 23 called upon the judge to deal with inconclusive fragments of the evidence. This he was not required to do. *Barnes* v. *Berkshire Street Railway,* 281 Mass. 47. *Gregory* v. *Maine Central Railroad,* 317 Mass. 636. Requests numbered 10, 12, 18, 22, 25, 26 and 27 asked instructions to the effect that there was no duty on the part of the defendant to provide the deceased with equipment for the elimination of dust, and that the deceased assumed the risk of the dangers to which he was exposed. These were questions for the jury to decide and the judge properly refused to give them. The twentieth request was given in substance. The ninth and nineteenth requests sought instructions concerning contractual assumption of the risk. The defendant was entitled to have the jury properly instructed with respect to this aspect of the case. An examination of the charge discloses no error. The judge in substance instructed the jury that the defendant owed the deceased a duty to furnish a reasonably

---

[1] Those refused were 4, 5, 6, 9, 10, 11, 12, 18, 19, 20, 22, 23, 24, 25, 26, 27, 29, 30 and 31.

safe place in which to work; that there was no duty to
warn of a danger that was open and obvious, but that there
was a duty to warn with respect to a hidden or concealed
danger of which it had knowledge or ought to have had
knowledge. This was in accordance with our decisions.
*Sylvain* v. *Boston & Maine Railroad,* 280 Mass. 503. *Cronan*
v. *Armitage,* 285 Mass. 520. *Engel* v. *Boston Ice Co.* 295
Mass. 428, 432. *Taylor* v. *Newcomb Baking Co.* 317 Mass.
609. The judge did not have to employ the precise lan-
guage of the requests. *Squires* v. *Fraska,* 301 Mass. 474,
476. Requests numbered 6, 29, 30 and 31 in substance
asked for instructions that the deceased did not contract
tuberculosis because of his working conditions; that tuber-
culosis was a disease and not an injury; and that "where
disability has no cause connected with employment except
the presence due to employment of germs of disease and
these germs find lodgment in the system only through the
natural process of respiration or inhalation, such disability
is caused through disease and no recovery can be had for it
in this action." The quoted portion was apparently based
on *Smith's Case,* 307 Mass. 516, 518, 519. It was not error
to deny them. The plaintiff does not seek to recover for
tuberculosis contracted as a mere disease having no connec-
tion with the working conditions of the deceased. Whether
the deceased contracted the disease because of his working
conditions was for the jury to decide. The other excep-
tions relating to the charge, not having been argued, are
treated as waived. *Boston* v. *Dolan,* 298 Mass. 346, 356.
We might add that from an examination of the charge,
which is set forth in full in the record, we are of the opinion
that the jury received adequate instructions as to all essen-
tial issues in the case.

3. Several exceptions relate to the exclusion of a series
of questions put to one Hassett (called by the defendant)
who was an industrial health inspector employed by the
department of labor and industries and had visited nu-
merous foundries in the vicinity of Worcester. These ques-
tions were asked for the purpose of showing that the con-
ditions in other foundries were similar to those found in the

defendant's plant and that in none of the foundries or stack rooms thereof were any of the employees equipped with masks. Evidence of this type could properly be excluded by the judge in his discretion as tending to raise collateral issues. *Hill Manuf. Co.* v. *Providence & New York Steamship Co.* 125 Mass. 292, 303. *Veginan* v. *Morse,* 160 Mass. 143, 147, 148. *Dolan* v. *Boott Cotton Mills,* 185 Mass. 576, 579, 580. See also *Robitaille* v. *Netoco Community Theatre of North Attleboro, Inc.* 305 Mass. 265.

We have carefully examined the other exceptions relating to the admission and exclusion of evidence and are of opinion that they reveal no reversible error. To discuss them in detail would add nothing to our law.

It follows that the defendant's exceptions must be overruled.

*So ordered.*

