## EDWARD P. LURY *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Middlesex.     March 15, 1910. — May 17, 1910.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Negligence,* Employer's liability.   *Railroad.*   *Practice, Civil,* Conduct of trial, Exceptions.   *Evidence,* As to appreciation of danger.

In an action against a railroad corporation for personal injuries, sustained while in the employ of the defendant as a night conductor in one of the defendant's freight yards, alleged to have been caused by the negligence of a day conductor of the defendant employed in the same yard when in charge or control of a train of the defendant, there was evidence for the plaintiff that, soon after 7.35 o'clock on a dark evening in April, the plaintiff in accordance with his duty and custom made an inspection of the tracks at the southerly end of the yard and ascertained that no cars were so near any adjoining track as to be struck by cars in motion upon it, and that on track number 4 there was room for three or more cars, that a few minutes later he boarded a locomotive, of which he had charge, and went to the northerly end of the yard, where the day conductor was at work with a switching engine and crew, that the day conductor said that he only had two or three more switches to make, after which he was going to the roundhouse at the southerly end of the yard, and should stop work for the day, that thereupon the plaintiff told him that they were making up a train on track number 6 in the southerly end of the yard and told him to look out for them if he was to use any of those tracks which had switches to reach tracks 4 and 6 and others, that to this the day conductor replied that he would look out for them, that it was the duty of the day conductor to see that no cars which were moved under his orders were left where they could not clear cars moving on adjoining tracks, that there was a custom in the yard when a car was so placed that it would be struck by a car running on another track "to notify anybody that would be liable to use that end of the yard," that no such notification was received by the plaintiff, that by eight o'clock the day conductor had stopped work and his switching engine was put up for the night, that the plaintiff and his crew did not go upon track number 4, but that at 8.15 P. M., when going from the southerly end of the yard to track number 6, they came in collision with cars left on track number 4, and the plaintiff was injured.   The plaintiff on cross-examination testified that it was his business "to know that the cars cleared before " he "made a single switching movement."   The locomotives in charge respectively of the plaintiff and of the day conductor were the only ones in use in the yard that night.   *Held,* that, although it was the plaintiff's duty to know that the tracks were clear, it could not be ruled as matter of law that he was wanting in ordinary prudence in relying on his inspection made about half an hour earlier, when he had found that their condition was safe, and that the question of the due care of the plaintiff was for the jury.   *Held, also,* that there was evidence from which negligence on the part of the day conductor might be inferred, and that the question of his negligence was for the jury.

Where, at the trial of an action of tort for personal injuries, the plaintiff, in answer

to a carefully prepared question addressed to him upon his cross-examination, assents to a statement of a custom in regard to which he has testified on his direct examination, which gives it a different significance less favorable for him than his own previous statement of it, and his attention is not specifically drawn to the possibly vital difference between the custom thus phrased and the statement of it given in his direct examination, it is proper for the presiding judge to refuse to give an instruction based on the assumption that the plaintiff's latest statement of the custom is the correct one, and it is the province of the jury to weigh these apparent inconsistencies in the plaintiff's testimony and determine what the custom was.

At the trial of an action of tort for personal injuries, where the case is tried and submitted to the jury upon several counts, alleging different grounds for the defendant's liability, it is proper for the presiding judge to refuse a request of the defendant for an instruction which is applicable to only one of the alleged grounds of liability but is not restricted by its terms to that issue.

In an action against a railroad corporation for personal injuries sustained while in the employ of the defendant as a night conductor in one of the defendant's freight yards, alleged to have been caused by the negligence of a day conductor of the defendant employed in the same yard when in charge of a train of the defendant, the plaintiff may be asked by his own counsel the question, " Did you have when you were going up there that night on that train any knowledge or appreciation that there was any danger in so doing ? " to which he answers " No, sir "; because whether the plaintiff knew or as a prudent person ought to have known of the risk he incurred is material upon the question of his due care.

On the redirect examination of the plaintiff in an action of tort, against a railroad corporation under the employers' liability act, in regard to the duties which he was required to perform in the service of the defendant, if the witness is asked, " What he was supposed to do," the use of this loose or objectionable phrase will not sustain an exception to the admission of the question against a general objection of the defendant, in the absence of any objection to the form of the question at the time it was asked.

TORT for personal injuries sustained on April 18, 1907, while in the employ of the defendant as a night conductor in the defendant's freight yard at South Framingham. Writ dated June 13, 1907.

In the Superior Court the case was tried before *Bell*, J. The declaration after amendment contained seven counts, but the case was submitted to the jury only on the fourth, sixth and seventh counts. The fourth count alleged that the plaintiff's injuries were caused by the negligence of the engineer of a locomotive engine of the defendant which was propelling a train of cars upon one of which was the plaintiff, the seventh count alleged that the plaintiff's injuries were caused by the negligence of some person or persons who was or were in charge of or who had control of a railroad train upon which was the plaintiff, and the sixth count alleged that the plaintiff's injuries were

caused by the negligence of a person in charge and control of a train of cars, which came in collision with the train of cars in which was the plaintiff, referring to the alleged negligence of one Willis, a day conductor of the defendant in the same yard.

The facts which appeared in evidence are stated in the opinion. At the close of the evidence the defendant asked the judge to make the following rulings :

"1. Upon all the evidence the plaintiff is not entitled to recover.

"2. There is not sufficient evidence of the plaintiff's due care.

"3. There is no evidence of the defendant's negligence.

"4. There is no evidence of negligence on the part of the conductor Willis."

"6. There is no evidence of negligence on the part of the engineer in charge of the engine which was moving the cars upon which Lury was riding.

"7. If the jury find that Mr. Willis placed no more cars upon track 4 after the alleged conversation with Mr. Lury, then there is no evidence of Willis's negligence.

"8. If the jury find that no cars were placed on track 4 after the conversation between the plaintiff and Willis, then the plaintiff was not in the exercise of due care."

The judge refused to make any of these rulings, and submitted the case to the jury on the three counts named above with instructions, which contained among other things the following :

"I understand that the inquiry is for most purposes confined to what happened between half past seven and quarter past eight, — a space of three quarters of an hour. Before half past seven, it is immaterial so far as the liability is concerned, because it is the testimony of Lury himself, which was uncontradicted, that it was his duty to inspect the yard and see if there were any cars which were in a dangerous position there; and he says he did inspect the yard. And so we seem to be led to either one of two conclusions with regard to any period before half past seven; either that there was no car there then, no danger there then, which concerns us, or else that Lury's inspection was careless. Either conclusion seems to follow, and if Lury was careless in his inspection then of course he cannot recover, as I shall state to you farther on. So, beginning with the car, the first question

was, was it there in a cornering position at half past seven? It was there at quarter past eight. It would follow, of course, if it was not there at half past seven, somebody put it there between half past seven and quarter past eight, because we know it was there at quarter past eight. . . . So determine what Willis did, by himself or his subordinates — because what his men did, he did; he was responsible for what they did, and whatever his men did, it was his duty to look out for and see that it was done right, and therefore whatever his men did, you may attribute it to him if he was negligent — did Willis, either during the time when the plaintiff after his inspection, if he made one, was going up and back, or after he left Lury at the north end of the yard and backed down toward the south end, push any car upon this track 4 in the position in which it was afterwards found, or was that car there before half past seven or 7.45, when Lury and Bennett say they looked there and did not see it?

"If he [the plaintiff] had been the only person switching cars in that yard that night, it would have been one situation, because he might have felt that when he had once made himself familiar with all that took place in that yard he would know all the changes thereafter made, and unless his memory slipped him, he would know what the changes were. But when you introduce into the yard another freight gang over which he has no control and of whose movements he may know much or may know little, there is a new element to be taken into account and which he must take into account on the question of care, and he says that he did take it into account in two ways: in the first place, he says there was a custom that the other men, the other gang, should notify him if there was anything which that gang did which would be dangerous to him. Was there such a custom or was there not? If there was such a custom, it depends on the question of what he ought to do. Did he have the full talk with Willis which he says he did and Willis's assurance that nothing should be done to injure him without his giving notice of it? If Willis gave that assurance, it would bear upon the question of his due care and of how much care he must take; and if it was Willis's act after that, which caused the accident, then it would bear directly upon his care in this case."

The jury returned a verdict for the defendant on the fourth

and the seventh counts, and returned a verdict for the plaintiff on the sixth count in the sum of $4,000. The defendant alleged exceptions to the refusal of the rulings requested by it and to the following instruction included in the portion of the judge's charge which is quoted above: " So determine what Willis did by himself or his subordinates, because what his men did, he did; he was responsible for what they did, and whatever his men did it was his duty to look out for and see that it was done right, and therefore, whatever his men did, you may attribute it to him if he was negligent."

The defendant also alleged certain exceptions relating to evidence. One of these was to the admission of the following question asked the plaintiff by his own counsel: " Did you have when you were going up there that night on that train any knowledge or appreciation that there was any danger in so doing?" The plaintiff answered, " No, sir." The other exceptions relating to evidence are described sufficiently in the opinion.

*J. L. Hall*, for the defendant.

*J. H. Vahey*, (*F. H. Hilton* with him,) for the plaintiff.

RUGG, J. The plaintiff was an experienced freight conductor working at night for the defendant in its South Framingham yard. He recovered upon a count alleging that he sustained injuries through the negligence of one Willis, a freight conductor of the defendant, working during the day in the same yard. There was evidence from which it might have been found that soon after 7.35 o'clock of a dark April night the plaintiff, in accordance with his duty and custom, made an inspection of the cars standing upon the several tracks at the southerly end of the yard, and ascertained that no cars " cornered," that is, were so near the junction with an adjoining track as to be struck by cars in motion upon it, and that on track number 4 there was room for three or four cars. A few minutes later he boarded the locomotive, of which he had charge, and went to the north end of the yard, where Willis was at work with a switching engine and crew. Willis said that he had only two or three more switches to make, after which he was going to the roundhouse, at the south end of the yard, and stop work for the day. Thereupon the plaintiff told him " We was making up a train . . . on No. 6,

in the south end of the yard, and to look out for us if he was to use any of those tracks that would come out into 4 lead," that is, the track from which were switches to reach tracks numbers 4, 6 and others. To this Willis replied that he would. It was Willis's duty to see that no cars moved by his orders were left where they would not clear cars moving on adjoining tracks. There was a custom in the yard respecting a warning by one of a train crew, which placed a car so that it cornered on another track, " of sending a man from one end of the iron to the other to see that these cars wasn't cornered or shoved out, and to notify anybody that would be liable to use that end of the yard." The locomotives in charge of the plaintiff and of Willis respectively were the only ones in use in the yard that night. By eight o'clock the latter had stopped work, and his locomotive was put up for the night. The plaintiff with his crew did not go upon track number 4, but at 8.15 P. M., going from the southerly end of the yard to track number 6, by reason of cars cornering from track number 4, he was injured.

1. There was testimony strongly tending to weaken the force of much of this, especially to the point that the custom governed only after notice had been given that another crew was to work in that part of the yard. But we cannot say that taken together it is not susceptible of the construction that the custom was general, prevailing even when there was no such notice. If this was found to be so, then, although it was the plaintiff's duty " to know that the cars cleared before " he " made a single switching movement " on the track in question,* it cannot be ruled as matter of law that he was wanting in ordinary prudence to rely on his inspection made barely half an hour before, when he testified that the condition was safe. The question of the due care of the plaintiff was for the jury on the whole evidence.

2. There was also some evidence from which negligence of Willis might be inferred. The conclusion cannot be pronounced unreasonable that either in the time between the inspection by the plaintiff and his conversation with Willis or after the latter left the north end of the yard, he caused cars upon track num-

---

* On the plaintiff's cross-examination he was asked the question, "It was your business to know that the cars cleared before you made a single switching movement on to that lead?" He answered, "Yes."

ber 4 to be so placed that they would not clear the adjoining tracks. If this was found, then he might have been pronounced negligent, especially if the general custom referred to existed and no notification was given. *Dacey* v. *Old Colony Railroad*, 153 Mass. 112.

3. It is earnestly argued that the request to the effect that "If the jury find that Mr. Willis placed no more cars upon track 4 after the alleged conversation with Mr. Lury, then there is no evidence of Willis's negligence" should have been given. This contention is predicated chiefly upon the assent of the plaintiff to the carefully prepared question put to him on cross-examination, whether the custom was not for the warning to be given after a notification of intention to work in that part of the yard if cars were pushed down so they would corner. The witness's attention was not specifically drawn to the possibly vital difference between the custom thus phrased and the statement given by him on direct examination, which he did not otherwise modify or withdraw. It is an instance of conflicting sentences of testimony, where an instruction is sought on the assumption that one is the whole truth. In such case it is the province of the jury to weigh apparent inconsistencies, and ascertain how far there is real conflict upon all the evidence and not upon any selected portion. *Donovan* v. *Chase-Shawmut Co.*, *ante*, 248, and cases cited.

The eighth request for an instruction to the effect that the plaintiff was not in the exercise of due care if no cars were placed upon track number 4 after his conversation with Willis was properly refused for the reason, in addition to those heretofore stated, that the case was submitted to the jury upon several counts as to which the request was not applicable, and it was .not restricted in its scope to the form of action now under discussion.

There is no ground for the contention that the jury were misled by the portion of the charge in substance that Willis was responsible for what his subordinates did in the management of the car. The context shows that this related to his duties of supervision as one having charge or control of a train, and in view of the evidence cannot be presumed to have been misunderstood or misapplied.

4. The testimony as to the custom was plainly competent as bearing upon the due care of the plaintiff and perhaps for other purposes. *Meadowcroft* v. *New York, New Haven, & Hartford Railroad,* 193 Mass. 249. If the defendant desired to have its effect limited or regarded the answer as irresponsive or unintelligible, appropriate action should have been taken at the time directed to such particulars. The inquiry to the plaintiff as to his appreciation of danger was competent. Whether he knew or as a prudent person ought to have known of the risk incurred bore upon his due care. The questions in redirect examination of the plaintiff as to his duties respecting examination of switches and tracks, to which objection was made, was upon a subject as to which he had been cross-examined fully, and may have related to the witness's familiarity either with unwritten customs prevailing in the yard or with written rules. In either event it was competent. The employment of loose and perhaps objectionable phraseology as to what he " was supposed to do " in a collateral clause of the question, in the absence of specific objection at the time, cannot avail now for setting aside a verdict.

*Exceptions overruled.*