CATHERINE T. HANLEY, administratrix, *vs.* BOSTON AND MAINE RAILROAD.

ANNIE M. MURPHY, administratrix, *vs.* SAME.

Middlesex.    February 7, 1934. — May 25, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & DONAHUE, JJ.

*Negligence*, Employer's liability, Railroad, Assumption of risk.   *Evidence*, Competency;   Opinion: expert;   Of custom;   Of damage;   Of rule of corporation.   *Damages*, In tort.

At the trial of an action of tort by an administrator against a railroad corporation under § 2 of the Federal employers' liability act, to recover for conscious suffering and the death of one employed by the defendant as a signal man, it appeared that the decedent was struck by the engine of a train of the defendant as he was repairing a switch;   that the engineer when half a mile distant saw him at work and blew his whistle once;   that another train was approaching the same switch from the opposite direction;   that the engineer of the first train continued to see the decedent at work during five minutes it took to traverse the intervening distance to the place where the decedent was, until his view was blocked by the boiler of the engine;   and that at some point he saw that the decedent was not going to move away from the track.   Subject to an exception by the defendant, the engineer testified that the "habitual custom" for engineers on the defendant's road, upon seeing persons on the track, or so near it as to be in a position of danger, was to give them warning by a series of short blasts, and that this custom had been in existence during the forty-seven years the witness had been in the employ of the defendant.   The judge refused to order a verdict for the defendant, and there was a verdict for the plaintiff.   On exceptions by the defendant, it was *held*, that
(1) There was evidence warranting a finding that the engineer was negligent;
(2) The rule, that from the nature of his employment an employee on a steam railroad must look out for passing trains and that in the absence of special circumstances those in charge of trains owe no duty to fellow employees working on or near tracks to protect them from injury, did not apply to require that a verdict for the defendant be ordered, since on the evidence a finding was warranted that the engineer saw the decedent for five minutes before he was struck and did nothing

to protect him except to sound the whistle once, which, it could have been found, he should have known the decedent failed to hear;

(3) Whether the decedent assumed the risk of the injury which he sustained was a question of fact for the jury;

(4) The evidence respecting the custom was admissible on the issue of the negligence of the defendant's engineer, and also upon the question of assumption of risk by the decedent.

At the trial of the action above described, an expert properly was allowed to testify that by certain tables in general use by insurance companies the amount necessary at various ages to produce a certain income for the normal expectancy of life could be shown; that the tables would show what principal sum would be necessary to give an income for each of those years of expectancy so that at the end of that period that sum would be exhausted but the income would remain through those years, and then further to testify on the question of damages.

A carpenter employed by the defendant at a point near the scene of the accident above described testified that his attention was called to the accident by somebody running past his door, and that "a short time before" he had heard several sharp blasts of a whistle which sounded as if they came from a train approaching from the direction of the train which struck the decedent. The plaintiff then, subject to exception by the defendant and solely as affecting the credibility and weight of the carpenter's testimony, was permitted to introduce in evidence a rule in a rule book of the defendant to show that three short blasts meant to back up a standing train. *Held*, that no error appeared.

TWO ACTIONS OF TORT. Writs dated July 20 and October 15, 1928.

In the Superior Court, the actions were tried together before *O'Connell*, J.

One Halloway, called by the defendant, testified that he was employed by the defendant as a carpenter; that on the morning of the accident he was standing sorting tools in a little carpenter's house; that the carpenter's house was situated directly opposite the scene of the accident; that his attention was called to the accident by somebody running past his door which was open; that a short time before that he had heard several sharp blasts of a whistle which sounded as if they came from a train coming from the direction of Portland.

The plaintiffs offered, and the judge, subject to an exception by the defendant, admitted a rule in the defendant's rule book to show that three short blasts meant to back up a standing train. The judge in his charge stated: "In relation to the rule which was introduced pertaining to the

sounding of those three short blasts and relating to being given when the train backed up, or was to back up, you must bear this in mind, gentlemen, that testimony was admissible only in so far as it related to the credibility and the weight to be given to the testimony of the witness, who, I believe, was the carpenter, that he had heard three blasts, and such inferences as can be drawn from his testimony, in saying whether those were the blasts which the fireman said had been sounded, or other blasts sounded before the accident, or whether they were blasts sounded after the train had come to a stop, and was about to back up. That testimony is before you for that restricted purpose only. You will recall at the time it was offered counsel for the plaintiff stated the restriction he asked be placed upon that testimony."

Other material evidence is described in the opinion.

There were verdicts for the plaintiffs in the sums of $11,650 and $11,450, respectively. The defendant alleged exceptions.

*J. M. Maloney,* (*M. J. Cohen* with him,) for the defendant.
*G. Alpert,* for the plaintiffs.

CROSBY, J. These actions under the Federal employers' liability act to recover in the first case for the conscious suffering and death of the plaintiff's intestate, and in the second for the death of the plaintiff's intestate, are brought by the widows of Thomas P. Hanley and Jeremiah J. Murphy, respectively, as administratrices of their husbands' estates. The cases were consolidated by agreement of the parties, and are before this court by a joint bill of exceptions. During a trial in the Superior Court with a jury, at the close of the evidence the plaintiffs respectively waived all counts of the declarations, except those charging the defendant with negligence on the part of its servants and agents. In each case there was a verdict for the plaintiff.

It was not disputed by the defendant that on January 20, 1928, the date of the accident, it was a common carrier engaged in interstate commerce; that Murphy died January 21, 1928, and Hanley died January 20, 1928. It was

admitted by the defendant that both intestates were killed while employed by it.   At the time of the accident and for some time prior thereto Hanley and Murphy were employed by the defendant as signal men.   There was evidence from which it could be found that about 9:35 o'clock on the morning of the accident they were sent by their foreman, one Shinnick, to repair a broken switch between main line three and main line four;  these were lines of the Portland division of the defendant at East Somerville.   The switch was governed by a signal on the track.   It was important that the switch be repaired as otherwise a train might be derailed on track four.   At about 10:20 o'clock on the morning of the accident the men were working repairing the switch.   At this point several tracks converged.   The main tracks from the place where the men were working toward Medford were straight for a distance of about two miles, except that at a point about one hundred fifty yards from the place of the accident there was a slight curve so that track four, in looking toward Boston, would take the line of track three if it continued straight.   At the time of the accident both men were facing at about forty-five degrees toward Boston;  they were about thirteen inches from the line of a train on track four.   The train which struck them was an express coming on track four toward Boston. It consisted of seven cars and an engine and was from six hundred to seven hundred feet in length.

The engineer of this train testified that he saw the two men when he reached a point one half mile away from where they were struck, and noticed that both of them were on the track;  that at that time the train was going at a speed of about six miles an hour — certainly not over ten miles an hour;  that when he saw the men he blew the whistle once;  that when he did so there was a train coming in the opposite direction on track three;  that this train was then about a quarter of a mile beyond where the men were at work, that is between them and the Boston station. He further testified that he was on the right side of the engine cab, and the men were to the left of the track as he faced them;  that he continued to see them as he ap-

proached them from a point a half mile away, until his vision was blocked by the boiler of his engine; that it took him five minutes to proceed from the place where he first saw them to the place where he struck them; that during all that five minutes he saw them on the track and watched them until the engine struck them; that at some point between the place where he first saw them and the place where they were struck, he saw they were not going to move off the track; that they stayed right where he first saw them all the time until they were struck. They did not move an inch. "If they moved an inch one or the other of the two trains was going to crash them." It did not occur to him to stop. They were leaning over the switches, one facing the witness, the other with his back to the witness; they were off the track from the time he first saw them, that is, they were between the rails of track three and track four a little closer to track four, although they were practically in the center. He further testified that he concluded that there was enough clearance to go by them; that it must have been the pilot of the engine that struck them; that he said to the fireman "you had better watch those fellows"; that after he said that the fireman said "someone had been hit." On redirect examination by the plaintiffs he testified that the "habitual custom" for engineers on the defendant road upon seeing persons on the track, or so near it as to be in a position of danger, was to give them warning by a series of short blasts; that this custom has been in existence during the forty-seven years the witness had been in the employ of the defendant. This question was admitted subject to the defendant's exception.

The fireman on the train, called by the defendant, testified that the engineer shut off steam that morning in the Malden station about three miles from the point of the accident; that the train was on time and "drifted"; that he was watching the signals; that he heard the engineer sound his whistle; that at that time the decedents were practically two hundred yards away; that the engineer gave a series of short, sharp blasts; that he then first

noticed the men on the tracks, they were between tracks three and four; that he rang the bell by hand although the automatic ringer was ringing; that there was another train going in the opposite direction; that when these trains passed each other the men were about two hundred feet ahead of the train and he kept looking at them from the time he first saw them two hundred or three hundred yards away; that the engineer told him to watch the men; that when he found they were not going to get out of the way he told the engineer to stop, and the engineer threw on the brakes; that after the men were struck the engine went about four hundred feet; that the train was going about ten miles an hour the last half mile before the accident. On cross-examination this witness was asked "Were three short blasts of the whistle blown?" In reply he answered that he did not remember.

At the close of the evidence the defendant filed a written motion in each case for a directed verdict. The motions were denied.

It is provided by § 2 of the Federal employers' liability act that the interstate carrier is liable for the injury or death of its employees occurring while engaged in interstate commerce and "resulting in whole or in part from the negligence of any of" its employees. *Cruzan* v. *New York Central & Hudson River Railroad*, 227 Mass. 594. *Delaware, Lackawanna & Western Railroad* v. *Koske*, 279 U. S. 7, 10. The only negligence upon which the plaintiffs rely is that of the engineer and fireman of the train which struck and killed the plaintiffs' intestates.

We are of opinion that upon the evidence verdicts could not properly have been directed for the defendant. The testimony of the engineer above set forth shows that he knew the men were in a dangerous position, and also that he knew that the noise of the train coming from the opposite direction to which the men were facing might prevent them from hearing the single sound of the whistle half a mile from where they were working, and that they did not hear the bell if it was ringing. Although the fireman testified that there were several blasts from the

whistle and that he rang the bell, the jury were not required to credit this testimony. The evidence warranted a finding that from their position and appearance the men had no knowledge of the approach of the train that struck them. There was some evidence that this train was travelling at a speed of from twenty to twenty-five miles an hour, but it could have been found from the engineer's testimony that its speed was six miles an hour, and that it could have been brought to a stop in a distance of two hundred feet. The evidence warranted a finding that in the exercise of reasonable care and prudence the engineer should have given some other warning than one blast of the whistle, or should have brought his train to a stop. *Davis* v. *New York, New Haven & Hartford Railroad,* 159 Mass. 532, 534.

It is settled by the law of this Commonwealth and in other jurisdictions that from the nature of his employment an employee on a steam railroad must look out for passing trains, and in the absence of special circumstances those in charge of trains owe no duty to fellow employees working on or near tracks to protect them from injury. It was said in *Cruzan* v. *New York Central & Hudson River Railroad,* 227 Mass. 594, at 597: "It may be assumed that, if the fireman or engineer of the passenger express train had seen Cruzan in a place of danger and had failed to use care to protect him, there would have been evidence of their negligence. But there was no evidence that either the engineer or fireman saw Cruzan in time to give him any warning." And in *Chesapeake & Ohio Railway* v. *Mihas,* 280 U. S. 102, it was said at page 108: "There is nothing in the record to show that employees engaged in the switching operation knew or had reason to believe that Mihas was in any position of danger. In the absence of such knowledge or ground for belief, they were not required to warn him of the impending switching operation or take other steps to protect him." These cases and the other cases cited by the defendant are distinguishable in their facts from the cases at bar, where the engineer saw the decedents in a place of great peril when he was half a mile away, and watched them up to the time his view of

them was obstructed by the boiler of the engine, and just before they· were struck. He testified that if they had moved an inch they would have been struck by the train; that the only warning he gave them was a single blast of the whistle and they did not look up nor change their position and he saw they were not going to move off the track. Although the decedents were required to rely upon their own vigilance to protect themselves from injury by engines and trains, and without being warned under ordinary circumstances, that rule will not prevent recovery where, as here, the engineer saw the men for five minutes before they were struck and did nothing to protect them except to sound the whistle once, which, it could be found, he should have known they failed to hear. *Norfolk & W. Railway* v. *Gesswine*, 144 Fed. Rep. 56, 58, 59.

It could have been found that the engineer, being aware of the presence of these men who were in plain sight so near the track that they might be run down, was guilty of negligence.

It follows that verdicts for the defendant could not properly have been ordered. See *New York, New Haven & Hartford Railroad* v. *Pascucci*, 46 Fed. Rep. (2d) 969; *Carfelo* v. *Delaware, Lackawanna & Western Railroad*, 54 Fed. Rep. (2d) 475; *Southern Railway* v. *Verelle*, 57 Fed. Rep. (2d) 1008, 1012.

It is the contention of the defendant that the plaintiffs' intestates assumed the risk, and on that ground the plaintiffs cannot recover. Respecting this issue the burden of proof was upon the defendant. "At common law the rule is well settled that a servant assumes extraordinary risks incident to his employment or risks caused by the master's negligence which are obvious or fully known and appreciated by him." *Boldt* v. *Pennsylvania Railroad*, 245 U. S. 441, 445. It does not follow, however, that an employee of a railroad corporation, whose work takes him near or upon the tracks where there is danger of his being run down by a train, assumes the risk of injury in all circumstances. In the cases at bar negligence of the engineer in control of the train was not a risk assumed by the decedents' contract of

employment, and upon the entire evidence the question
of their assumption of the risk was for the jury. *Howard*
v. *New York, New Haven & Hartford Railroad*, 236 Mass.
370, and cases cited at page 374. *Seaboard Air Line Rail-
way* v. *Koennecke*, 239 U. S. 352. *Chesapeake & Ohio Rail-
way* v. *Nixon*, 271 U. S. 218, is distinguishable in its facts
from the cases at bar. See *Biernacki* v. *Pennsylvania Rail-
road*, 45 Fed. Rep. (2d) 677, at page 678.

The exception to the admission of evidence of a custom
for engineers on the defendant's railroad upon seeing per-
sons on the track or so near it as to be in a position· of
danger to give them warning by a series of short blasts
cannot be sustained. The defendant's engineer testified
.that such had been the habitual custom to his knowledge
during the forty-seven years he had been in the defendant's
employ, and was the general custom on the defendant's
railroad. We are of opinion that this evidence was ad-
missible. It is not contended by the plaintiffs that there
was any rule of the defendant that such warning should
be given. That fact, however, does not affect the admissi-
bility of evidence of a habitual and general custom. It
could have been found that notwithstanding this custom
the engineer ignored it and gave no warning apart from
the sounding of a single blast of the whistle when his train
was half a mile away from the men, and five minutes
before they were struck. The evidence was admissible on
the issue of the defendant's negligence, and also upon the
question of assumption of risk. In view of the character
of the work of the decedents as signal men, and the cir-
cumstance that the work was required to be performed
near the tracks of the railroad, it might fairly be found
that they were familiar with the general custom and relied
upon it. *Davis* v. *New York, New Haven & Hartford Rail-
road*, 159 Mass. 532, 535, 536. *Hines* v. *Stanley G. I.
Electric Manuf. Co.* 199 Mass. 522, 525, 526. *Hines* v.
*Stanley G. I. Electric Manuf. Co.* 203 Mass. 288, 289, 290.
*Santore* v. *New York Central & Hudson River Railroad*, 203
Mass. 437, 440, 444. *La Fond* v. *Boston & Maine Railroad*,
208 Mass. 451, 457. *Director General of Railroads* v. *Temp-*

*lin,* 268 Fed. Rep. 483, 484, 485; *S. C.* 254 U. S. 656; *Lehigh Valley Railroad* v. *Doktor,* 290 Fed. Rep. 760, 763, 764. The evidence of a habitual or general custom in the cases at bar distinguishes them from the decision in *Casey* v. *Boston & Maine Railroad,* 231 Mass. 529. In that case there was no evidence that the engineer, fireman or the head brakeman saw, or by the exercise of reasonable diligence could have seen, the plaintiff's intestate.

The witness Goddard, called by the plaintiffs, who it could have been found qualified as an expert, was allowed to testify, subject to the defendant's exception, that by certain tables in general use by insurance companies the amount necessary at various ages to produce a certain income for the normal expectancy of life could be shown, that the tables would show what principal sum would be necessary to give an income for each of those years of expectancy so that at the end of that period that sum would be exhausted, but that the income would remain through those years. The witness then was allowed to testify subject to the defendant's exception upon the question of damages. It was said by Knowlton, J., speaking for this court in *Rooney* v. *New York, New Haven & Hartford Railroad,* 173 Mass. 222, at page 227, where similar evidence was considered: A "jury can apply the principle on which annuities are purchased only after they have found facts which form a proper basis for such a computation; but if all such facts are found and made definite, the principle on which such tables are computed can properly be used in estimating the amount to be allowed as a present sum to compensate for a probable annual loss for a probable term of years." *Banks* v. *Braman,* 195 Mass. 97, 99–100. *Fournier* v. *Zinn,* 257 Mass. 575, 576. *Pearl* v. *Omaha & St. Louis Railroad,* 115 Iowa, 535, 541–542. The exception to the admission of this testimony must be overruled.

No error appears in the admission of the rule book to show that three short blasts mean to back up a standing train.

At the close of the evidence the defendant presented forty-nine requests for rulings in each case, some of which

were given and others were refused subject to the defendant's exception. Those that have been argued have hereinbefore been dealt with. It would serve no useful purpose to refer to these requests in detail. They have all been carefully considered with the result that we find no error.

The defendant saved several exceptions to the judge's charge. A thorough reading of the charge fails to show any error of law. The judge therein dealt at length with the evidence. He fully and accurately presented to the jury the questions presented for their decision.

The entire record shows no error of law in the refusal to direct verdicts in favor of the defendant, in the admission of evidence, in the failure to give certain requests, or in the instructions to the jury. It results that the entry in each case must be

*Exceptions overruled.*