FRANK W. WHEELER *vs.* BOSTON AND MAINE RAILROAD..

Essex.   November 7, 1941. — January 27, 1942.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Negligence,* Railroad, Invited person, Contributory. *Proximate Cause.*

Evidence that, while an expressman at a way station of a railroad was
loading parcels into the baggage car of a train from a truck on which
he was standing alongside the car, the train started ahead without
the customary warning to him by starting signals or otherwise, where-
upon, erroneously thinking his truck was moving, he seized a hand
iron on the car, was pulled and was injured, warranted findings that
the railroad employees were negligent toward him as an invitee and
that their negligence was the proximate cause of his injuries, and did
not require a finding of contributory negligence on his part.

TORT.   Writ in the Superior Court dated August 24,
1939.

The case was tried before *Donahue,* J., and a verdict was
returned for the plaintiff in the sum of $2,000.

*A. M. Pinkham,* (*D. F. McNeal* with him,) for the de-
fendant.

*M. S. Heaphy,* (*F. J. Madden* with him,) for the plaintiff.

DOLAN, J.   This is an action of tort to recover compen-
sation for personal injuries sustained by the plaintiff by
reason of the alleged negligent starting of a train of the
defendant at its Beverly station.   At the close of the plain-
tiff's evidence the defendant rested and moved for a directed
verdict in its favor.   The motion was denied subject to the
defendant's exception and the jury returned a verdict for
the plaintiff.

The evidence would have warranted the jury in finding
the following facts: At the time of the accident the plain-
tiff was and for twenty-three years had been in the employ
of the Railway Express Agency.   For twelve years preced-
ing the accident and at the time of its occurrence his par-
ticular job was to drive a "four-wheel depot truck" and
unload "stuff on to the train."   The truck has a platform

level with the door of the platform of the baggage cars of the train. On October 24, 1938, the plaintiff loaded the "stuff from the office" of the express agency onto the truck and backed it "along side" the baggage car when the train came in at about 6:27 P.M. He was standing on the truck putting the "freight" in through the middle door of the baggage car. He had "only got three or four pieces in" out of "twenty-five or so" when the train started. He grabbed the hand irons on the side of the baggage door "to pull his truck up . . . while he was standing on his truck, walking, kind of walking at the same time; . . . it pulled him back and wedged his knee in between the . . . truck and the baggage car . . . he hollered . . . he didn't dare to let go . . . and . . . they pulled the string on the bell and the train stopped." It was not more than a minute from the time the train was in the station that it started. The plaintiff received no warning that the train was to start. Generally "they" gave him a couple of minutes to load, sometimes longer, according to the time they got in and whether they were late or not. When "they didn't give him time, they would give him a warning, and . . . he . . . would jump off the truck and get . . . [it] away . . . the man at the end of the train was the baggage man . . . when he starts the train at night he generally puts his lantern out . . . he is at the next door where . . . the plaintiff . . . can see him." The plaintiff "was looking down towards the end car that night . . . was watching for the baggage man if he was going to start." The latter gave him no signal, although "They always give a warning." Ordinarily there was no occasion for the plaintiff to hold on to the car, but on this occasion he did so because he thought his truck was running backwards. He was going to pull it up toward the car door so that he could work. Instead the car had started and was going forward. Had the plaintiff "let go . . . [he] would have gone under the wheels."

The defendant's employees knew that the plaintiff was standing on an express truck and had been tossing matter into the head end of the baggage car which was the last

car of the train. The train was due at Beverly at 6:19 P.M. It was in charge of a conductor. He had a baggage master in the rear car, an assistant conductor, "a trainman, a brakeman, who would be between the second and third coach assisting the passengers on and off the train." The conductor's duties in connection with starting the train were to give the signal to go ahead when "he got the motion from whatever trainman he had behind." The "baggage master motions from the rear end, and then the next man." If it is dark (it was dark when the accident happened) "the baggage master would stick his lantern out the door . . . and if in the daytime, he puts his hand up; then the next man gets that signal"; and if the conductor "has a motion of a clear way, he gives the motion to go ahead," the train starts and the engineer rings the bell "as they start." On the night of the accident the conductor was "six cars away from where" a United States mail truck and the plaintiff's truck were loading, but he could not tell whether the trucks were clear of the "car" or not. The mail messenger had placed his truck "up to" the mail car. His son was assisting him. The messenger was holding the truck. His son had just time enough to put one "pouch" on and take one off before the train started. The messenger heard a scream from Wheeler and the train stopped on an emergency brake signal after going about one hundred feet. He saw no signal given to start the train, heard no bell, saw no lantern flash at the end of the train, and heard no one "holler" that the train was about to start. He did not see the baggage man at all that night.

The defendant's contentions are that the plaintiff was negligent "in grabbing hold of handles at a side door of a baggage car of a moving train"; that he knew or should have known that the train was moving if he had acted as a reasonably prudent man; that the evidence was insufficient to justify a finding that the defendant was negligent; and that, even if the defendant did not warn the plaintiff that the train was about to start, its failure to do so was not the proximate cause of his injuries.

These contentions cannot be sustained. The plaintiff, in

the course of his employment loading the car, had the right to use it for the purposes of his employment and stood toward the defendant as an invitee to whom the defendant owed a duty to use reasonable care for his safety. He was in a place where he was required to be in the performance of his duties and of which the defendant had notice. *Turner* v. *Boston & Maine Railroad,* 158 Mass. 261, 263. *Ward* v. *New York Central Railroad,* 248 Mass. 115, 117. *French* v. *Boston & Maine Railroad,* 230 Mass. 163, 165, 166. In the last case just cited, under somewhat similar circumstances, the court said: "While the plaintiff was in a place of danger and was bound to exercise reasonable diligence to protect himself from harm, still he was entitled to rely to a certain extent upon the practice which could have been found to exist, and of which he had knowledge," and held that the failure of the engineer to stop in accordance with a practice which could have been found to exist would be evidence of negligence.

In the present case there was ample evidence to warrant the jury in finding that no signal or other warning was given the plaintiff in accordance with the practice of which the plaintiff had knowledge; that he was entitled to rely to a certain extent upon it; and that the failure of the defendant to act in accordance with that practice constituted negligence on its part which bore a causal relation to the injuries sustained by him. The jury were not required to find on the evidence that, acting as a reasonable man, the plaintiff should have known that the train was starting. They could find that he was entitled to assume in accordance with the usual custom that he would be warned that the train was about to start. It could not have been ruled that the plaintiff was guilty of contributory negligence in grasping the iron handles of the side of the baggage car, when he mistook the motion of the train for that of his truck, when the train started without warning to him. The jury could find that this was an instinctive action on his part, and a natural one, particularly in view of the fact that they could also find that he had no reason, by virtue of the absence of warning, to believe that the train

was in motion. It was for the jury to say whether in all the circumstances the plaintiff was guilty of contributory negligence, "to say, upon all the circumstances, including the existing emergency and the need of immediate action under which they . . . [could] find that the plaintiff acted, whether in fact his conduct was that of a reasonably prudent man . . ." *Dixon* v. *New York, New Haven & Hartford Railroad,* 207 Mass. 126, 130.

*Exceptions overruled.*